# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERON KENNETH HOLSTON,<br><br>        Plaintiff,<br><br>    v.<br><br>GARCIA,<br><br>        Defendant. | No.  2:20-CV-2466-DJC-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, who is proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Defendant's motion for summary judgment.  See ECF No. 55. Plaintiff has filed a declaration in opposition, an opposition brief, and a supplemental opposition brief. See ECF Nos. 63, 65, and 79.  Defendant has filed a reply. See ECF No. 82.

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See

1

1  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the
2  moving party

> . . . always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.
>
> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P.
> 56(c)(1).

8      If the moving party meets its initial responsibility, the burden then shifts to the
9  opposing party to establish that a genuine issue as to any material fact actually does exist.  See
10 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to
11 establish the existence of this factual dispute, the opposing party may not rely upon the
12 allegations or denials of its pleadings but is required to tender evidence of specific facts in the
13 form of affidavits, and/or admissible discovery material, in support of its contention that the
14 dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The
15 opposing party must demonstrate that the fact in contention is material, i.e., a fact that might
16 affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.
17 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th
18 Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
19 return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436
20 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than
21 simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record
22 taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no
23 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the
24 claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions
25 of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.
26 ///
27 ///
28 ///

2

1    In resolving the summary judgment motion, the Court examines the pleadings,

2    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

3    See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,

4    477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

5    court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

6    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

7    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

8    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

9    1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

10   judge, not whether there is literally no evidence, but whether there is any upon which a jury could

11   properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

12   imposed." Anderson, 477 U.S. at 251.

13

14   ### I.  PLAINTIFF'S ALLEGATIONS

15   This action proceeds on Plaintiff's original complaint. See ECF No. 1. Plaintiff

16   initially named two defendants: (1) Brown, an officer with the Placerville Police Department; and

17   (2) Garcia, a deputy with the El Dorado County Sheriff's Office. See id. at 2. Defendant Brown

18   was later voluntarily dismissed from the case. See ECF Nos. 24 and 25. Plaintiff's remaining

19   claim against Garcia alleges excessive force by a law enforcement officer in violation of the

20   Fourteenth Amendment. See ECF No. 1, pg. 6.

21   Plaintiff claims he was arrested on July 28, 2020, by Brown for failing to register

22   as a sex offender per Cal. Penal Code § 290. See id. at 3. Plaintiff was then transported by Brown

23   to the El Dorado County Jail. See id. at 6. Once at the jail, Plaintiff claims he was removed from

24   the police car by force while handcuffed behind his back. See id. Plaintiff claims that, as Garcia

25   and another officer were walking Plaintiff from the sally port, he "used profanities against no one

26   in particular." Id. Plaintiff alleges that, once inside the building, Garcia momentarily released

27   Plaintiff's arm and struck Plaintiff with a closed left fist to Plaintiff's left eye. See id. at 6-7.

28   Plaintiff alleges that this broke his prescription glasses and caused bruising on Plaintiff's left eye

1    and cheek area. See id. at 7.

2            Plaintiff claims that Garcia then tackled Plaintiff to the ground and handcuffed him

3    behind his back. See id. Plaintiff then walked approximately fifteen feet to face a wall, where

4    Garcia instructed another officer to unlock Plaintiff's handcuffs. See id. Once the handcuffs were

5    removed from Plaintiff's left wrist, Plaintiff claims Garcia forcefully twisted Plaintiff's left arm

6    behind his back while dragging him to the ground. See id. at 7-8. Plaintiff alleges that, once on

7    the ground, Garcia struck Plaintiff with closed fists about Plaintiff's head and torso while other

8    officers physically restrained Plaintiff. See id. at 8. Plaintiff claims that Garcia used this force as

9    punishment for Plaintiff's use of profanities. See id. at 8-9.

10           Plaintiff seeks damages for his pain, suffering, and humiliation as well as damages

11   incurred from breaking his prescription glasses. See id. at 6. Plaintiff further seeks punitive

12   damages for the alleged excessive force. See id. at 9.

13

14                        **II.  THE PARTIES' EVIDENCE**

15       A.    **Defendant's Motion**

16           Defendant's motion for summary judgment is supported by the following: (1) a

17   separate statement of undisputed facts, ECF No. 55-1; (2) a declaration by Garcia, ECF No. 55-3;

18   (3) a declaration by Jacob J. Graham, ECF No. 55-4; and (4) a declaration by Jonathon Eslick,

19   ECF No. 55-5.

20           Defendant asserts the following facts are undisputed:

21           1.    On July 28, 2020, Plaintiff Theron Holston was arrested
22   and taken to El Dorado County Jail to serve a period of flash incarceration
     pursuant to violating the conditions of his parole.

23           2.    Upon entry to the jail at 3:00 p.m., Holston began cursing
24   and making threats that he was going to fight the officers.

25           3.    Officer Garcia was in control of Holston's right arm while
     another jail officer controlled Holston's left arm.

26           4.    Holston's hands were handcuffed in the front.

27           5.    Within seconds of entering the jail's booking area, Holston
     tensed up and pulled away from Officer Garcia and the other jail officer
28   while cursing at them.

                                    4

6.      Officer Garcia perceived Holston's agitated state and ordered Holston to stop resisting.

7.      Holston relaxed, but after a few seconds tensed up and attempted to bring his hands up to his chest.

8.      At this point, Officer Garcia was unable to keep Holston's hands down in front of him nor place him in a more secure control hold so he released his grip of Holston's right arm and did a hair-pull takedown, which consisted of Officer Garcia grabbing the <u>back</u> of Holston's head and pulling him by his hair down to the floor.

9.      Officer Garcia's sole intent in using this takedown was to maintain order and security.

10.     Officer Garcia did not punch Holston in the eye, as evidence by Holston's glasses, which remained on his face undisturbed.

11.     Once on the floor, Holston continued resisting by turning his lower body and legs.

12.     Officer Garcia repeatedly ordered Holston to stop resisting while they were on the ground.

13.     After about a minute, Holston relaxed, and Officer Garcia and the other jail officer helped Holston up to a standing position.

14.     At this point, additional officers had already responded to the intake area to assist.

15.     Before continuing the booking process, Officer Garcia placed Holston against the intake wall, so that he could search Holston and switch his handcuffs to behind his back.

16.     Officer Garcia advised Holston of his intention to switch his handcuffs and ordered Holston to resist while he made this change.

17.     Before pat searching Holston, Officer Garcia asked Holston if he had anything in his pickets that could stick or poke him to which Holston stated, "I hope so."

18.     Holston continued cursing and stating he was going to fight Officer Garcia.

19.     Officer Garcia then conducted a pat search of Holston and found no drugs, weapons, or needles.

20.     After searching Holston, Officer Garcia proceeded to remove Holston's cuffs so he could make the transition to behind the back.

21.     Before doing so, Holston was again ordered not to resist.

22.     However, as soon as his cuffs were removed, Holston again attempted to pull away from the officers' grip of him and pushed his left elbow towards one of the officer's head.

5

1

2

        23.    Officer Garcia and several other officers perceived Holston's resistance and immediately responded by taking Holston down onto the intake floor.

3

4

        24.    The officers then spent approximately two minutes trying to handcuff Holston behind the back while on the ground.

5

        25.    At no point did any officer strike or kick Holston while he was on the ground.

6

7

        26.    Officer Garcia eventually handcuffed Holston behind the back and then assisted him to his feet and sat him in an intake booth.

8

        27.    Holston's intake process was then completed without further incident.

9

10

        28.    LVN Christ Wise was on standby in the booking area during the incident.

11

        29.    After Holston was booked at approximately 3:23 p.m., LVN Wise evaluated Holston.

12

13

        30.    During the examination, LVN Wise prepared a Receiving Screening Report.

14

        31.    As reflected in the Screening Report, Holston told LVN Wise he did not need any medical treatment and denied having injuries.

15

16

        32.    LVN Wise's report notes red marks and small abrasions to Holston's face.

17

18

        33.    There is, however, no mention of any physical injury that might be associated with being repeatedly struck in the head and torso while on the ground.

19

20

        34.    Holston's operative complaint alleges Officer Garcia used excessive force against him in violation of the <u>Fourteenth Amendment</u> during the July 28, 2020, incident.

21

22

23

        35.    Holston alleges two separate acts of excessive force occurred during the July 28, 2020, incident: (1) Officer Garcia threw his left closed fist with force into his left eye while he was handcuffed behind the back, causing his glasses to break; and (2) Officer Garcia proceeded to drag him to the ground and strike him multiple time with a closed fist about his head and torso.

24

25

        36.    The only physical injury Holston claims to have suffered from the incident was bruising to his left eye and cheek area.

26

ECF No. 55-1, pgs. 1-6 (Defendant's separate statement of undisputed facts).

27

/ / /

28

/ / /

1    **B.    Plaintiff's Opposition**

2        Plaintiff filed a declaration in opposition to the motion, a statement of disputed

3    facts, and an opposition brief. See ECF Nos. 63-65. Plaintiff claims that, at the time of his filings,

4    he did not have access to Defendant's motion for summary judgment and was unaware of the

5    facts alleged in the motion. See ECF No. 65, pg. 2.  The Court directed that Defendant re-serve

6    the motion for summary judgment and granted Plaintiff additional time to file a supplemental

7    opposition.  See ECF No. 74.  Plaintiff then filed a supplemental opposition to the motion, which

8    addresses the facts alleged in Defendant's motion. See ECF No. 79.

9        Facts Admitted

10       In Plaintiff's supplemental opposition, Plaintiff largely admits to facts surrounding

11   the two takedowns.  See ECF No. 79.  Those admitted facts are as follows:

12
13       1.    Defendant had control of Plaintiff's right arm while being escorted into the jail and Plaintiff was handcuffed in the front, although he had initially stated that he was handcuffed from behind.

14
15       2.    After the first takedown, Defendant and another officer helped Plaintiff to his feet, other officers had responded to the incident, and Plaintiff was placed against a wall to be searched and to switch his handcuffs to behind his back.

16

17       3.    Defendant conducted a pat search of Plaintiff and found no drugs, weapons, or needles.

18
19       4.    Defendant then took off Plaintiff's handcuffs, but Plaintiff claims he was unaware of Defendant's intent to transition them to behind his back.

20
21       5.    After the second takedown, Defendant handcuffed Plaintiff behind his back, helped him to his feet, and completed the intake process without further incident.

22
23       6.    After Plaintiff was booked, Plaintiff was evaluated by LVN Wise, who prepared a Receiving Screening Report.

24
25       7.    The report noted red marks and small abrasions on Plaintiff's face, although Plaintiff denies that this was the extent of his injuries.

26
27       8.    Plaintiff admits that, in his initial complaint, he alleged excessive force in violation of the Fourteenth Amendment based on the two separate takedown and the blows to the head and torso associated with each takedown.

28   / / /

1        9.     Although Plaintiff initially described the blow in the initial
2  takedown as hitting the left side of his face, he now claims that the blow
hit the right side of his face.

3        ECF No. 79, pgs. 3-7.

4        <u>Facts Denied</u>

5        Plaintiff denies the remainder of the facts outlined in Defendant's separate

6  statement. These denials fall into four categories: (1) the initial cause of Plaintiff's arrest; (2)

7  Plaintiff's words and actions; (3) Defendant's words and actions; and (4) Plaintiff's interaction

8  with LVN Wise.  <u>See id.</u>  In support of these denials, Plaintiff attaches his own declaration to his

9  supplemental opposition. <u>See</u> ECF No. 79-1.

10        Regarding the initial cause of Plaintiff's arrest, Plaintiff claims that he was arrested

11  for failing to register as a sex offender per Cal. Penal Code § 290. <u>See id.</u> at 6. This contradicts

12  Defendant's claim that Plaintiff was incarcerated for violation of his parole.

13        Regarding Plaintiff's words and actions, Plaintiff claims that he at no point

14  threatened to fight any of the officers. <u>See id.</u> at 7. Plaintiff instead claims that he used the phrases

15  "fuck you punk;" "fuck you nigger;" and "fuck you bitch" to express his disrespect. <u>Id.</u> This

16  contradicts Defendant's claims that Plaintiff had threatened to fight the officers at multiple times

17  throughout their encounter. Plaintiff further claims that he at no point resisted after he exited the

18  police vehicle and entered the sally port, either by raising his arms or attempting to pull away

19  from the officers. <u>See id.</u> at 6-9. Plaintiff does admit that he tensed up at one point as he believed

20  that he was going to be assaulted but argues that this tensing was not resisting. <u>See id.</u> at 7-8.

21  These claims contradict Defendant's claims that Plaintiff resisted the officers at multiple times

22  throughout the encounter.

23        Regarding Defendant's words and actions, Plaintiff claims that Defendant at no

24  point ordered Plaintiff to not resist. <u>See id.</u> at 8. This contradicts Defendant's claims that

25  Defendant ordered Plaintiff to not resist multiple times throughout their encounter. Plaintiff

26  further claims that Defendant punched him on the right side of his face and tackled him to the

27  ground. <u>See id.</u> at 1-2. This contradicts Defendant's claim that he performed a hair-pull takedown

28  and did not punch Plaintiff. Plaintiff also claims that, when Defendant brought him to the ground

1   the second time, Defendant began striking him on the head and torso. See id. at 4. This

2   contradicts Defendant's claim that he did not punch or kick Plaintiff and was only trying to

3   handcuff Plaintiff behind his back.

4           Finally, regarding Plaintiff's interaction with LVN Wise, Plaintiff claims that he

5   did not tell LVN Wise that he did not need medical attention. See id. at 9. Plaintiff also claims

6   that the red marks and abrasions on Plaintiff's face as noted in LVN Wise's report are indicative

7   of blows to the head and torso. This contradicts Defendant's claims that there was no mention of

8   physical injury associated with being repeatedly struck in the head and torso while on the ground.

9   Plaintiff further claims that the red marks and abrasions do not capture the full extent of his

10  injuries. See id. at 6. Plaintiff claims that, in addition to the red marks and abrasions, Plaintiff also

11  suffered permanent injury to his shoulder caused by Defendant's actions during the second

12  takedown. See ECF No. 79-1, pg. 4-5. This contradicts Defendant's claim that the only injury

13  Plaintiff claimed in his original complaint was bruising to his left eye and cheek area.

14          Plaintiff's addendum to his supplemental opposition argues that, at the time of the

15  encounter, Plaintiff was a pre-trial detainee, arrested for violation of Cal. Penal Code §§ 69 and

16  290.018. See ECF No. 90. As such, Plaintiff argues that this case is properly analyzed under the

17  Fourteenth Amendment reasonableness standard. See id. To support this claim, Plaintiff has

18  attached a copy of the declaration and determination prepared by Officer A. Brown regarding his

19  arrest prior to the encounter. See id. at 6.

20

21  **III. DISCUSSION**

22          Defendant argues that summary judgment is appropriate because: (1) Plaintiff's

23  excessive force claim is properly analyzed under the Eighth Amendment, not the Fourteenth

24  Amendment and, under the Eighth Amendment standard, the force used by Defendant was not

25  applied maliciously and sadistically; and (2) Defendant is entitled to qualified immunity. See

26  ECF No. 55. In Defendant's reply, as a response to Plaintiff argument that his claim must be

27  analyzed under the Fourteenth Amendment's reasonableness standard, Defendant argues that,

28  regardless of the standard applied, the force used was reasonable and not applied sadistically or

1    maliciously.  See ECF No. 82.

2          For the reasons discussed below, the Court finds Defendant's arguments

3    unpersuasive under either the Eighth Amendment standard or the Fourteenth Amendment

4    standard.  The Court also finds that Defendant is not entitled to qualified immunity at this time.

5          **A.    <u>Plaintiff's Excessive Force Claim</u>**

6          This case proceeds on Plaintiff's excessive force claim against Defendant Garcia.

7    Because the parties disagree as to whether the claim should be analyzed under the Fourteenth

8    Amendment or Eighth Amendment, the Court will consider the merits of Plaintiff's claim under

9    both standards.

10          1.    <u>Eighth Amendment</u>

11          The treatment a prisoner receives in prison and the conditions under which the

12    prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

13    and unusual punishment.   See <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993); <u>Farmer v. Brennan</u>,

14    511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

15    of dignity, civilized standards, humanity, and decency." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102

16    (1976).  Conditions of confinement may, however, be harsh and restrictive.  See <u>Rhodes v.</u>

17    <u>Chapman</u>, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

18    "food, clothing, shelter, sanitation, medical care, and personal safety." <u>Toussaint v. McCarthy</u>,

19    801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when

20    two requirements are met: (1) objectively, the official's act or omission must be so serious such

21    that it results in the denial of the minimal civilized measure of life's necessities; and (2)

22    subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

23    inflicting harm.  See <u>Farmer</u>, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

24    official must have a "sufficiently culpable mind."  See <u>id.</u>

25          When prison officials stand accused of using excessive force, the core judicial

26    inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline,

27    or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992);

28    <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986).  The "malicious and sadistic" standard, as

1    opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims,

2    is applied to excessive force claims because prison officials generally do not have time to reflect

3    on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475

4    U.S. at 320-21.  In determining whether force was excessive, the court considers the following

5    factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship

6    between the need for force and the amount of force used; (4) the nature of the threat reasonably

7    perceived by prison officers; and (5) efforts made to temper the severity of a forceful response.

8    See Hudson, 503 U.S. at 7.  The absence of an emergency situation is probative of whether force

9    was applied maliciously or sadistically.  See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir.

10    1993) (en banc).  The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9.  Finally,

11    because the use of force relates to the prison's legitimate penological interest in maintaining

12    security and order, the court must be deferential to the conduct of prison officials.  See Whitley,

13    475 U.S. at 321-22.

14           In the pending motion for summary judgment, Defendant argues that the force

15    used by Defendant was not applied maliciously and sadistically. See ECF No. 55, pg. 7. More

16    specifically, Defendant argues: (1) Defendant did not punch Plaintiff in the eye or strike him on

17    the head and torso, and that video recordings reflect that Defendant only grabbed the back of

18    Plaintiff's head and attempt to handcuff him; (2) Plaintiff did not suffer any injury during the

19    second takedown apart from red marks and small abrasions on his face, as reported by LVN

20    Wise; and (3) even if Plaintiff's allegations are true, the force applied does not show sadistic or

21    malicious intent. See id. at 8-10.

22           Defendant asserts that the undisputed evidence shows that he did not punch

23    Plaintiff in the eye or strike him on the head and torso.  The Court disagrees and finds there is a

24    genuine issue of material fact.  Plaintiff has stated both in his original verified complaint, which

25    the Court can consider as Plaintiff's declaration, and in his opposition declaration that Defendant

26    did punch him in the face and struck him on the head and torso. The surveillance video offered by

27    the Defendant does not provide evidence sufficient to dispute Plaintiff's claim.  A reasonable jury

28    could interpret the video evidence in any number of ways and ultimately decide that the video

1    supports Plaintiff's version of events.

2              As to Defendant's claim that Plaintiff did not suffer any injuries apart from red

3    marks and small abrasions on his face, the Court again finds there is a genuine issue of material

4    fact. Plaintiff claims that, in addition to the red marks and abrasions, he also experienced bruising

5    around his eye and permanent damage to his shoulder. Defendant argues in the reply that

6    Plaintiff's "conclusory lay opinion, however, cannot replace 'competent medical evidence' in

7    summary judgment briefing." ECF No. 82, pg. 4 (citing <u>Calloway v. Kelley</u>, 2015 U.S. Dist.

8    LEXIS 10420 at *54 (E.D. Cal. Aug. 6, 2015)).  Even taking this to be true, Defendant's

9    argument is not persuasive. There is no indication in LVN Wise's report that she assessed

10   Plaintiff's shoulder or his torso for bruising that would have been concealed by his shirt.  As such,

11   a reasonable jury could find that Plaintiff's claims of injury are true.  Curiously, despite

12   Defendant's argument that Plaintiff's declaration cannot overcome "competent medical

13   evidence," Defendant provides no such evidence, for example by way of a declaration or

14   deposition testimony from a medical doctor, to support the current motion.

15             Regarding Defendant's argument that, even if Plaintiff's claims are true, the force

16   applied does not rise to the level of being sadistic and malicious, the Court finds the argument

17   unpersuasive.  Defendant argues that there is no evidence to support a claim that Defendant

18   applied force maliciously and sadistically. <u>See</u> ECF No. 55, pg. 10. More specifically, Defendant

19   argues that: (1) Plaintiff's threats to fight officers and attempts to resist show an undisputed need

20   for force; (2) Plaintiff's claim of bruising constitutes minor injury; (3) Plaintiff's minor injuries

21   show that the force used was proportionate to the need for force; (4) Defendant reasonably

22   perceived a threat based on Plaintiff's threat to fight officers; and (5) Defendant attempted to

23   temper the force used against Plaintiff by issuing several orders and warning to stop resisting. <u>See</u>

24   <u>id.</u> at 8-10.  Defendant relies on the facts outlined in his statement of undisputed material facts to

25   support these claims. <u>See</u> ECF No. 55-1.

26   / / /

27   / / /

28   / / /

1    As to Defendant's claim that Plaintiff suffered only minor injuries, this claim is

2    disputed, as noted above, and may include permanent damage to Plaintiff's shoulder. As to

3    Defendant's claims that Plaintiff threatened to fight officers and that Defendant issued several

4    orders and warnings to stop resisting, Plaintiff denies both claims in his supplemental opposition.

5    Although Plaintiff does admit that he directed obscenities at the officer, he denies ever

6    threatening to fight the officers. Because the surveillance video provided with Defendant's

7    motion does not contain audio, the words exchanged throughout the encounter cannot be

8    conclusively ascertained at this time on the current record.  Given the competing versions of

9    events, the Court finds that there is a genuine issue of material fact as to the words used by

10    Plaintiff.

11    Finally, as to Defendant's claim that Plaintiff resisted throughout the encounter,

12    Plaintiff claims in his supplemental opposition that he did not resist and tensed up only in

13    anticipation of harm. Again, because the surveillance video is susceptible to various

14    interpretations, it does not provide evidence sufficient to conclusively disprove Plaintiff's claim.

15    The Court thus finds that there is also a genuine issue of material fact regarding Plaintiff's

16    resistance, or lack thereof, during the encounter.

17                    2.    Fourteenth Amendment

18    The Fourteenth Amendment's Due Process Clause applies to excessive force

19    claims brought by pretrial detainees.  See Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015).

20    "[T]he Fourteenth Amendment is more protective than the Eighth Amendment 'because the

21    Fourteenth Amendment prohibits all punishment of pretrial detainees, while the Eighth

22    Amendment only prevents the imposition of cruel and unusual punishment of convicted

23    prisoners.'" Vazquez v. County of Kern, 949 F.3d 1153, 1163–64 (9th Cir. 2020) (quoting

24    Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004)).   "[P]retrial detainees (unlike convicted

25    prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" Id. Unlike

26    prisoners, "a pretrial detainee must show only that the force purposely or knowingly used against

27    him was objectively unreasonable." Id. at 396–97. This assessment requires a court or factfinder

28    to "make this determination from the perspective of a reasonable officer on the scene, including

13

1    what the officer knew at the time . . .” Id. at 397. In assessing the reasonableness or

2    unreasonableness of the force used, courts may consider:

3            the relationship between the need for the use of force and the amount of
            force used; the extent of the plaintiff's injury; any effort made by the

4            officer to temper or to limit the amount of force; the severity of the
            security problem at issue; the threat reasonably perceived by the officer;

5            and whether the plaintiff was actively resisting.

6            Id.

7          In Defendant's reply to Plaintiff's opposition, Defendant argues that, under the

8    Fourteenth Amendment standard for excessive force, the force used by Defendant was

9    reasonable.[1] See ECF No. 82, pgs. 3-5. As noted above, there are genuine issues of material fact

10    which must be decided by a jury.  On the current record, a reasonable jury could decide that

11    Defendant applied force in an unreasonable manner given the circumstances.  As such, the Court

12    finds that Defendant's argument is also unpersuasive under the Fourteenth Amendment.

13        **B.**    **Qualified Immunity**

14          Government officials enjoy qualified immunity from civil damages unless their

15    conduct violates “clearly established statutory or constitutional rights of which a reasonable

16    person would have known.”  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general,

17    qualified immunity protects “all but the plainly incompetent or those who knowingly violate the

18    law.”  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

19    immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the

20    injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier

21    v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether

22    the right was clearly established.  See id.  This inquiry “must be undertaken in light of the specific

23    context of the case, not as a broad general proposition . . . .”  Id.  “[T]he right the official is

24    alleged to have violated must have been ‘clearly established’ in a more particularized, and hence

25    more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable

26

27            [1]    It appears that Defendant erroneously argued the case under the Eighth
    Amendment in his original motion for summary judgment and now includes a Fourteenth
    Amendment analysis in the reply brief after Plaintiff objected in his opposition to application of

28    the Eighth Amendment standard.

1    official would understand that what he is doing violates that right." Id. at 202 (citation omitted).

2    Thus, the final step in the analysis is to determine whether a reasonable officer in similar

3    circumstances would have thought his conduct violated the alleged right. See id. at 205.

4           When identifying the right allegedly violated, the court must define the right more

5    narrowly than the constitutional provision guaranteeing the right, but more broadly than the

6    factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th

7    Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently

8    clear that a reasonable official would understand [that] what [the official] is doing violates the

9    right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court

10   concludes that a right was clearly established, an officer is not entitled to qualified immunity

11   because a reasonably competent public official is charged with knowing the law governing his

12   conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff

13   has alleged a violation of a clearly established right, the government official is entitled to

14   qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct

15   did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see

16   also Saucier, 533 U.S. at 205.

17          The first factors in the qualified immunity analysis involve purely legal questions.

18   See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal

19   determination based on a prior factual finding as to the reasonableness of the government

20   official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). The district court

21   has discretion to determine which of the Saucier factors to analyze first. See Pearson v. Callahan,

22   555 U.S. 223, 236 (2009). In resolving these issues, the court must view the evidence in the light

23   most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. See

24   Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

25          In Defendant's motion for summary judgment, Defendant argues that, even if

26   Defendant's actions are considered excessive force, he is still entitled to qualified immunity.

27   Defendant argues that: (1) Defendant did not violate Plaintiff's constitutional right to be free from

28   cruel and unusual punishment as the force used was reasonable; and (2) a reasonable officer in

1   Defendant's position would not have believed Defendant's actions were unconstitutional. <u>See</u>

2   ECF No. 55, pg. 11. The Court finds that Defendant's arguments are not persuasive. Viewing the

3   evidence in the light most favorable to Plaintiff, Defendant is not entitled to qualified immunity.

4           As noted above, there are genuine issues of material fact as to whether Defendant

5   violated Plaintiff's constitutional rights, either under the Eighth Amendment or Fourteenth

6   Amendment. Viewing the evidence in the light most favorable to Plaintiff, a jury could conclude

7   that Plaintiff was not resisting or threatening to fight officers, Defendant at no point ordered or

8   warned Plaintiff not to resist, Defendant struck Plaintiff multiple times to the head and torso,

9   Defendant twisted Plaintiff's arm to the point of permanent injury, and Plaintiff suffered bruising

10  to his face from Defendant's punch as well as permanent injury to his shoulder. Thus, a

11  reasonable jury could find that Defendant violated Plaintiff's constitutional rights, whether

12  analyzed under the Eighth Amendment or Fourteenth Amendment.  Additionally, on the current

13  record, a jury could find that a reasonable officer would have been aware that their actions

14  violated Plaintiff's rights.  Given the factual determinations which remain to be made, the Court

15  cannot at this point find that Defendant is entitled to qualified immunity as a matter of law.

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendant's motion for summary judgment, ECF No 55, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 19, 2025

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE